# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| ABC ACQUISITION COMPANY, LLC, <br><br> Plaintiff/Counter-Defendant, <br><br> v. <br><br> DONALD KOZIEL, et al., <br><br> Defendant/Counter-Claimant. | No. 18 CV 8420 <br><br> Judge Manish S. Shah |

## MEMORANDUM OPINION AND ORDER

Defendant (and counter-claimant) Donald Koziel entered into an employment agreement with plaintiff (and counter-defendant) ABC Acquisition Company, LLC (the parties refer to ABC as Aetna Bearing Company, a name it uses to conduct business). That agreement automatically renewed each year unless either party sent timely written notice of their intent not to renew. Aetna issued timely notice and eventually sued Koziel, advancing claims not at issue here. Koziel has raised an affirmative defense and filed a counterclaim, both of which allege that Aetna breached the agreement (in part by violating an implied covenant of good faith and fair dealing) when it issued notice of nonrenewal and refused to pay him severance. Aetna says that the contract distinguishes between nonrenewal and termination, and there is no obligation to pay severance for a nonrenewal. It moves to strike Koziel's affirmative defense and dismiss his counterclaim.

## I. Legal Standards

A complaint must contain a short and plain statement that plausibly suggests a right to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009); Fed. R. Civ. P. 8(a)(2). In ruling on a motion to dismiss, although a court must accept all factual allegations as true and draw all reasonable inferences in the plaintiff's favor, the court need not do the same for legal conclusions or "threadbare recitals" supported by only "conclusory statements." *Ashcroft*, 556 U.S. at 678, 80–82. The plaintiff must provide "more than labels" or "a formulaic recitation of a cause of action's elements," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and the complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Id.* at 562. When ruling on a motion to dismiss, the court may consider the allegations in the counterclaim and documents attached thereto. *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012); *N. Tr. Co. v. Peters*, 69 F.3d 123, 128 (7th Cir. 1995).

Motions to strike are disfavored, and affirmative defenses will only be struck when they are "insufficient on the face of the pleadings." *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). *See also* Fed. R. Civ. P. 12(f) ("The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.")

**II. Facts**

Koziel entered into an employment agreement with Aetna on April 11, 2016. [19] at 27, ¶ 5.[1] That agreement had an initial term of one year and "automatically renew[ed] for consecutive one (1) year periods unless (a) either party provide[d] the other party thirty (30) days advance written notice of nonrenewal before the end of the then-current term, or (b) sooner terminated in accordance with the terms of this Agreement." [19-1] § 2.

A different section of the agreement ([19-1] § 5.4) reads,

> § 5.4 <u>Termination Without Cause or Good Reason</u>. At any time the Company shall have the right to terminate the Employee's employment hereunder without Cause by written notice to the Employee, and the Employee shall have the right to terminate the Employee's employment hereunder for Good Reason (defined below) by written notice to the Company; provided, however, that in either case the Company shall (a) … (b) subject to the execution by the Employee of a release agreement containing standard terms in the form generally used by the Company, pay to the Employee, in monthly installments consistent with the Company's normal payroll schedule during the twelve (12) month period following termination (the end of such period, the "Severance Date"), an amount equal to twelve (12) months of the Employee's Base Salary at the time of termination.

On March 6, 2018, Aetna told Koziel in writing that it would not renew his employment agreement. [19] at 28, ¶ 7; [19-2]. The then-current term expired around April 11, 2018. *See* [19] at 27, ¶ 5; [19-2]. Nonetheless, Koziel continued working for Aetna until that September. [19] at 28, ¶ 9. Koziel alleges that Aetna served the

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. The facts are taken from the allegations in (and attachments to) the counterclaim. [19] at 27–31; [19-1]; [19-2]. Page numbers have been included to differentiate between the paragraphs in the answer to the complaint and the paragraphs in the counterclaim.

3

written notice in bad faith, [19] at 28, ¶ 10, abused their contractual discretion in violation of the covenant of good faith and fair dealing, *id.* ¶ 12, and breached the agreement by failing to pay him severance. *Id.* ¶ 14. His counterclaim does not allege that he executed the release agreement described in § 5.4(b), nor that all conditions precedent to the enforcement of the agreement have occurred or been performed. [31] at 11; [19] at 28–29.

III. **Analysis**

The employment agreement is governed by Illinois law. Aetna argues that Illinois law applies, [25] at 5 n.1, and Koziel does not cite any law other than Illinois's. *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014) (parties can waive the choice of law issue by failing to assert it, so long as they "submit[] to Illinois law and rel[y] solely on it") (quoting *Lott v. Levitt*, 556 F.3d 564, 568 (7th Cir. 2009)). The employment agreement is in accord. [19-1] § 10 ("[t]his Agreement shall be governed by and construed in accordance with the laws of the State of Illinois").

Although a "breach of the covenant of good faith and fair dealing is not an independent cause of action" outside of the insurance context, *APS Sports Collectibles, Inc. v. Sports Time, Inc.*, 299 F.3d 624, 628 (7th Cir. 2002), breach of contract is. *See, e.g., Pepper Const. Co. v. Palmolive Tower Condominiums, LLC,* 2016 IL App (1st) 142754, ¶ 85. Koziel's counterclaim (titled, "Breach of Contract," [19] at 27) cites a breach of the explicit terms of the agreement (as well as a breach of the covenant of good faith and fair dealing). *Id.* at 28, ¶¶ 12, 14. *See also* [31] at 4 (Koziel's briefing clarifies that his claim is based on an explicit breach of the agreement).

4

That said, the counterclaim fails to state a claim for breach of the explicit terms of the agreement. Those terms were not ambiguous. The agreement lasted for automatically renewing one-year terms until either party provided thirty-days' written notice of non-renewal. [19-1] § 2. Written notice was provided on March 6, 2018, [19] at 28, ¶ 7; [19-2], a little more than thirty days before the second term ended. *See* [19] at 28, ¶ 7; [19-2] ("Please accept this ... formal written notice by ABC Acquisition Company, LLC not to renew the Employment Agreement."). The notice made no mention of termination, said that it was a notice "not to renew" the agreement, and coincided with the upcoming renewal period. *See* [19-2]. The notice was a § 2 notice. The agreement lapsed—pursuant to its terms, without being breached—in April 2018.

Koziel's employment was not terminated under § 5.4 of the agreement. Koziel assumes that, because Aetna "cited no cause to end the Agreement in its notice," it must have been a "Termination without Cause or Good Reason" under § 5.4. [31] at 4–5. But that reading ignores § 2, and contracts must be "construed as a whole, giving effect to each provision." *Kolmin v. Vill. of Wilmette*, 250 Ill.App.3d 83, 86 (1st Dist. 1993). Section 2 allowed both parties to elect to not renew the agreement, whereas § 5.4 allowed both parties to terminate Koziel's employment. [19-1] §§ 2, 5.4. *Perry v. Cmty. Action Servs.,* 82 F.Supp.2d 892, 897 (N.D. Ill. 2000) (noting that termination and nonrenewal are "not generally interchangeable in common contract parlance or business practice, nor is severance generally received upon non-renewal of a contract"). Read together, the former provided a means for choosing not to renew the

5

employer-employee relationship at one-year intervals, and the latter provided a means for ending that relationship at any time between those intervals. [19-1] §§ 2, 5.4. The former did not trigger severance pay obligations, and the latter did. *See id.*

Koziel does not allege an event that would have entitled him to severance. Simply alleging that he was entitled to severance without providing any factual support is insufficient, especially when the attachments foreclose any other conclusion. *Centers v. Centennial Mortg., Inc.*, 398 F.3d 930, 933 (7th Cir. 2005) ("to the extent that the terms of an attached contract conflict with the allegations of the complaint, the contract controls"); *Ogden Martin Sys. of Indianapolis, Inc. v. Whiting Corp.*, 179 F.3d 523, 529 (7th Cir. 1999) ("[a] plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment"). Koziel has failed to allege a breach of the terms of the agreement.

Koziel's counterclaim also fails insofar as it is premised on the covenant of good faith and fair dealing. The covenant may be pled as an alternative theory of liability under a breach-of-contract action, *see Wilson v. Career Educ. Corp.,* 729 F.3d 665, 674 (7th Cir. 2013), but is "only an aid to interpretation, not a source of contractual duties or liability." *Zeidler v. A & W Restaurants, Inc.*, 301 F.3d 572, 575 (7th Cir. 2002). In other words, it is a rule of construction, *In re Kmart Corp.*, 434 F.3d 536, 542 (7th Cir. 2006), and a "court will not resort to rules of construction where an agreement is clear and unambiguous." *McDonald's Corp. v. Mazur*, 127 Ill.App.3d 608, 612–13 (1st Dist. 1984). *See also In re Kmart Corp.*, 434 F.3d at 542 ("[t]here's no ambiguity in § 2[.6] that could be resolved through the norm of good faith"); *Cromeens, Holloman, Sibert,*

6

*Inc v. AB Volvo*, 349 F.3d 376, 395 (7th Cir. 2003) ("Illinois courts use the covenant to determine the intent of the parties where a contract is susceptible to two conflicting constructions.")

The covenant often applies in situations where one party has allegedly exercised discretion in a manner the other party thinks was inconsistent with reasonable expectations. *See Cromeens,* 349 F.3d at 395 (7th Cir. 2003). But the doctrine only "imposes a limitation on the exercise of discretion vested in one of the parties to a contract," *Dayan v. McDonald's Corp.*, 125 Ill.App.3d 972, 990–91 (1st Dist. 1984), and the nonrenewal term gave Koziel just as much discretion as Aetna. *See* [19-1] § 2; *Cromeens*, 349 F.3d at 395–96 (when the contracts "g[a]ve the right to terminate without cause on sixty days' notice to both parties," the "provision d[id] not vest a single party with discretion but rather grant[ed] both parties the unfettered right to terminate"). The decision to not renew the agreement was not "particularly within the power" of Aetna, *see Dayan*, 125 Ill.App.3d at 990–91, so the implied covenant does not apply to limit Aetna's discretion under § 2.

An action taken pursuant to an express contract provision can violate the covenant if discretion was exercised in a manner "contrary to the reasonable expectations of the parties." *Wilson v. Career Educ. Corp.,* 729 F.3d 665, 674 (7th Cir. 2013). *See also Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1443 (7th Cir. 1992) (the controlling party "must exercise that discretion reasonably and with proper motive, and may not do so arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties") (quoting *Dayan*, 125

7

Ill.App.3d at 991); *Interim Health Care of N. Illinois, Inc. v. Interim Health Care, Inc.*, 225 F.3d 876, 884 (7th Cir. 2000); *Cramer v. Ins. Exch. Agency*, 174 Ill.2d 513, 524 (1996). *But see Perez v. Citicorp Mortg., Inc.,* 301 Ill.App.3d 413, 424 (1st Dist. 1998) ("[p]arties are entitled to enforce the terms of negotiated contracts to the letter without being mulcted for lack of good faith"). But the covenant is at most an "undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of drafting, and which therefore was not resolved explicitly by the parties." *F.D.I.C. v. Rayman*, 117 F.3d 994, 1000 (7th Cir. 1997) (quoting *Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting*, 908 F.2d 1351, 1357 (7th Cir. 1990)).

Koziel alleges that Aetna made use of an explicit term in the agreement, *see* [19] at 27–28, ¶¶ 6–7, so the question would be whether Koziel has plausibly alleged that it did so "arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties." *Beraha*, 956 F.2d at 1443. Koziel's theory is that Aetna decided to move the company headquarters to Michigan and did not want to bring Koziel along, so it kept the move a secret while waiting until they could end their relationship pursuant to § 2 instead of § 5.4 to avoid paying severance. Koziel does not allege that there was no reason to move the company—nor does he plausibly suggest that the move was pretext for terminating him without severance—and he has alleged that the decision to not tell him about the move could have saved Aetna money. In other words, he has alleged that the decision was neither arbitrary nor capricious.

He has also failed to allege that Aetna was acting in a manner inconsistent with his reasonable expectations. Koziel suggests it was reasonable for him to expect that Aetna would have told him ahead of time whether they planned to do anything that would materially alter the terms of their relationship (e.g., move headquarters out-of-state) during the months that fell in between the annual renewal dates. *See* [31] at 7. But the "express terms of the [agreement] preclude[s] such an expectation." *Wilson v. Career Educ. Corp.*, 729 F.3d 665, 675 (7th Cir. 2013). The parties bargained for thirty days' notice before the end of a term, so it was within the expectations of the parties to get a notice of nonrenewal in March 2018. Aetna was only required to give thirty-days' notice of their intent to not renew, [19-1] § 2; nothing in the contract suggests some additional obligation to tell Koziel that they planned to move the company during the year that followed an unrenewed contract. That Aetna permitted Koziel to continue working for six months without an employment agreement suggests nothing about the parties' expectations when they entered into the contract.

At best, Koziel's counterclaim alleges that avoiding his severance pay was the but-for reason that Aetna decided to not renew his agreement under § 2 rather than terminate him later under § 5.4. *See* [31] at 7–8; *Wilson*, 729 F.3d at 675. But a decision is not in bad faith just because it is opportunistic or just because it benefits one party and is to the detriment of the other—it has to be opportunistic in a way the parties did not contemplate. *See F.D.I.C.*, 117 F.3d at 1000; *Wilson*, 729 F.3d at 674; *Original Great Am. Chocolate Chip Cookie Co. v. River Valley Cookies, Ltd.*, 970 F.2d 273, 280 (7th Cir. 1992) ("[c]ontract law does not require parties to behave

9

altruistically toward each other; it does not proceed on the philosophy that I am my brother's keeper"). Aetna gave Koziel the notice to which he was entitled, and did not upset their bargained-for expectations.

Koziel's counterclaim also fails to allege that a necessary condition precedent was satisfied. Such an allegation is "essential." *Redfield v. Cont'l Cas. Corp.*, 818 F.2d 596, 610 (7th Cir. 1987) ("[a]n essential allegation of a complaint based upon a breach of contract is that the plaintiff performed all contractual conditions required of him"). In order to receive severance, Koziel had to execute a standard release form. [19-1] § 5.4. Koziel's briefing says that Aetna never gave him a copy of their standard release form. [31] at 10–11. That allegation does not appear in his counterclaim. *See* [19] at 27–28; [31] at 11–12. But even if Aetna prevented Koziel from executing the release, he still would only be entitled to severance if Aetna "terminated his employment" under § 5.4—which he has not plausibly alleged. So even if he were allowed to amend his counterclaim (as he requests) to allege the performance (or excuse) of that necessary condition precedent, his claim is not plausible because his employment was not terminated under § 5.4.

None of Koziel's other arguments about the nature of the implied covenant of good faith and fair dealing change this result. The duty "guides the construction" of the agreement, *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1443 (7th Cir. 1992), but it cannot guide the construction of this unambiguous agreement to a different result here. Aetna's motion to dismiss the counterclaim is granted, and Koziel's counterclaim for breach of his employment agreement is dismissed.

Koziel's affirmative defense includes a short and plain statement of the facts alleging the basis for his defense. *See* [19] at 27–28. His answer admits the existence of the agreement in question (and that Koziel signed it), *id.* ¶ 5, and attaches a complete copy. [19-1]. It is titled, "Affirmative Defense – Material Breach," and says that Aetna breached the same employment agreement that Aetna has alleged Koziel breached. *See* [19] at 28, ¶¶ 11–14. A plaintiff's breach of a contract is an affirmative defense under Illinois law. *Carroll v. Acme-Cleveland Corp.*, 955 F.2d 1107, 1115 (7th Cir. 1992) (citing *Reg'l Transp. Auth. v. Burlington N. Inc.*, 100 Ill.App.3d 779, 786 (1st Dist. 1981)). Koziel's statement of his defense is short, plain, simple, concise and direct. Fed. R. Civ. P. 8(a), (d). There is nothing wrong with its "technical form." Fed. R. Civ. P. 8 (d).

Legally, however, it is insufficient on its face. *See Heller Financial, Inc.*, 883 F.2d at 1294. As discussed above, it is plain from the allegations in Koziel's counterclaim that Aetna did not breach either the explicit terms of the agreement or the implied covenant of good faith and faith dealing. Aetna's motion to strike is granted, and Koziel's affirmative defense of breach of contract is stricken.

## IV. Conclusion

Aetna's motions to strike and dismiss, [24], are both granted. All dismissals are without prejudice. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana,* 786 F.3d 510, 519 (7th Cir. 2015); *Redfield v. Cont'l Cas. Corp.*, 818 F.2d 596, 610 (7th Cir. 1987) ("[t]he appropriate remedy for a plaintiff's failure to allege compliance with conditions precedent is dismissal without prejudice").

ENTER:

/s/ Manish S. Shah

Manish S. Shah
United States District Judge

Date: August 8, 2019